O

JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INFINITY MICRO COMPUTER, INC., a corporation; MICHAEL BANAFSHEHA, an individual; and MATTHEW BANAFSHEHA, an individual,<br><br>    Plaintiff,<br><br>v.<br><br>CONTINENTAL CASUALTY COMPANY, an Illinois corporation; and TRANSPORTATION INSURANCE COMPANY, an Illinois corporation,<br><br>    Defendants. | Case No. CV 15-04777 DDP (SSx)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>[Dkts 19, 20] |

Presently before the court are cross motions for summary judgment. Having considered the submissions of the parties and heard oral argument, the court denies Plaintiffs' Motion, grants Defendants' Motion, and adopts the following Order.

**I. Background**

Plaintiff Infinity Micro Computer, Inc. ("Infinity") acted as a broker, or middle-man, of computer equipment purchased from

third-party suppliers who would then ship the equipment directly to Plaintiff's customers. (Declaration of Michael Banafsheha ("Michael") ¶4; Declaration of Matthew Banafsheha ("Matthew") ¶4.) Plaintiff operated its business primarily through advertising on its website.[1] (Matthew Dec. ¶4.)

Plaintiff purchased a comprehensive business liability insurance policy ("the Policy") from Defendants for the period of March 31, 2009 until March 31, 2013. (Def. Exhibits A-D.) The Policy covered damages for "personal and advertising injury." (Declaration of E. Craig Sowder, Exs A-D to Sowder Dec., at 10 & 11.) The Policy defined personal and advertising injury as "an injury . . . arising out of one or more of the following offenses: . . . 14(f) the use of another's advertising idea in your 'advertisement'; or 14(g) infringing upon another's copyright, trade dress or slogan in your 'advertisement'." (Id. at 23-25, respectively.) The Policy excluded injuries "(3) [a]rising out of oral or written publication of material whose first publication took place before the beginning of the policy period; . . . (7) [a]rising out of the failure of goods, product or services to conform with any statement of quality or performance made in your advertisement; . . . and (13) [a]rising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. However, this exclusion does not apply to infringement in your advertisement of copyright, trade dress or slogan." (Id. at 16-18, respectively.)

---

[1] Plaintiffs' papers appear to use the term "Plaintiff" to apply to Infinity and the Individual Defendants, collectively. This Order does the same, unless otherwise specified.

2

1    On March 19, 2013, Plaintiff received an email from nonparty
2 Cisco Systems stating that Plaintiff was wrongfully "displaying
3 [Cisco's] trademarked Premiere Certified Partner logo" on
4 Plaintiff's website.  (Michael Dec. ¶6; Matthew Dec. ¶5; Pl.
5 Exhibit A. at A002-03.)  Cisco informed Plaintiff that "only
6 authorized Cisco resellers are allowed to advertise themselves as
7 Cisco partners and to use any of [Cisco's] trademarked logos" and
8 Plaintiff's use of Cisco's logo was "a violation of [Cisco's]
9 trademark rights".  (Pl. Exhibit A. at A003.)  Cisco further
10 informed Plaintiff that because Plaintiff was not a "Cisco partner,
11 use of Cisco Reseller Certified logos and advertising by
12 [Plaintiff] [is] considered by [Cisco] to be false and misleading".
13 (Id.)  Cisco requested Plaintiff "cease and desist the use of any
14 and all Cisco logos on [Plaintiff's] website and in all
15 [Plaintiff's] sales and marketing materials and ceas[e] from
16 advertising [Plaintiff's] company as a Cisco partner".  (Michael
17 Dec. ¶6; Matthew Dec. ¶5; Pl. Exhibit A. at A002-03.)
18    On June 7, 2013, Cisco informed Plaintiff that Cisco had
19 "determined that a significant number of Cisco products purchased
20 and sold by [Plaintiff] were undoubtedly counterfeit[,]" and
21 pointed out that the products provided by one of Plaintiff's
22 suppliers were failing at an alarmingly high rate of 40%.[2]  (Pl.
23 Exhibit B. at B006.)  Cisco also informed Plaintiff that Cisco
24 believed that "[t]he fact that [Plaintiff] has continued to buy
25 suspiciously low priced 'Cisco' products" from Plaintiff's
26 suppliers "suggests that [Plaintiff] knew that the 'Cisco' products

---

28    [2] The supplier,, Mark Morgan, was indicted for selling counterfeit parts to the federal government on May 22, 2013.

3

it was selling were counterfeit". (Exhibit B. at B009.) Cisco demanded over $1.5 million from Plaintiff for selling counterfeit products. (Michael Dec. ¶8; Pl. Exhibit B. at B009.)

Plaintiff tendered the June 7, 2013 demand to Defendant on July 11, 2013. (Michael Dec. ¶8; Pl. Exhibit B.) On, August 2, 2013, Plaintiff responded to Cisco and denied Cisco's assertion that Plaintiff was selling counterfeit products. (Id.) On August 20, 2013, Defendants denied coverage. (Michael Dec. ¶13 & Pl. Exhibit E.)

Cisco filed a complaint against Plaintiff on April 17, 2014, and Plaintiff tendered Cisco's complaint to Defendants on April 21, 2014. (Michael Dec. ¶14; Pl. Exhibit G.) Defendants again denied Plaintiff's claim, claiming that several exclusions applied. (Michael Dec. ¶15; Pl. Exhibit H.)

On September 9, 2014, Plaintiff asked Defendants for reconsideration of their denial. (Michael Dec. ¶19 and Exhibit J.) On September 15, 2014, Defendants reiterated their denial, stating that the same exclusions asserted in May 2014 still applied and that the claim brought by Cisco did not allege a covered "advertising injury." (Id.)

On October 7, 2014, Cisco amended its complaint. (Pl. Exhibits K.) Cisco's amended complaint included eight causes of action including: (1)trademark infringement, 15 U.S.C. §1141(1)(a); (2) trademark counterfeiting, 15 U.S.C. §1141(1)(b); (3) false advertising, 15 U.S.C. §1125(a); (4) trademark dilution, 15 U.S.C. §1125(c); (5) California Statutory Dilution, Cal. Bus. & Prof. Code § 14245 & 14247; (6) California Statutory unfair competition, Cal. Bus. & Prof. Code §17200 et seq.; (7) California common law

4

trademark infringement; and (8) California false advertising, Cal. Bus. & Prof. Code §17500 et seq. (Pl. Exhibit K.) In the amended complaint, Cisco alleged that since February 2006, Plaintiff had "sold and trafficked counterfeit Cisco products," and did so despite numerous demands from Cisco and several government seizures of counterfeit goods. (Pl. Exhibit K at K144 ¶23.)

On October 10, 2014, Plaintiff's coverage counsel submitted a letter to Defendant explaining why Defendants' initial denial of coverage was in error and why, in light of new allegations by Cisco in the first amended complaint, Defendant had a duty to defend Plaintiff. (Michael Dec. ¶21 & Pl. Exhibit L.) On October 14, 2014, Defendant replied to Plaintiff reiterating its refusal to defend. (Michael Dec. ¶22 & Pl. Exhibit M.)

Plaintiff now moves for partial summary judgment, seeking a finding that Defendants had a duty to defend Plaintiff in the Cisco suit. (Pl. Mot. for Partial Summary Judgment at 2:7-13.) Defendants' have filed a cross-motion for summary judgment seeking the opposite determination. (Def. Mot. for Summary Judgment at 2:21-24.)

**II. Legal Standard**

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the

absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). All reasonable inferences from the evidence must be drawn in favor of the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 242 (1986). If the moving party does not bear the burden of proof at trial, it is entitled to summary judgment if it can demonstrate that "there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 323.

Once the moving party meets its burden, the burden shifts to the nonmoving party opposing the motion, who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. Summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. There is no genuine issue of fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

It is not the court's task "to scour the record in search of a genuine issue of triable fact." Keenan v. Allan, 91 F.3d 1275, 1278 (9th Cir.1996). Counsel has an obligation to lay out their support clearly. Carmen v. San Francisco Sch. Dist., 237 F.3d 1026, 1031 (9th Cir.2001). The court "need not examine the entire file for

6

evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposition papers with adequate references so that it could conveniently be found." Id.

**III. Discussion**

In an action seeking declaratory relief regarding a duty to defend, "the insured must prove the existence of a potential for coverage, while the insurer must establish the absence of any such potential. In other words, the insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot." Montrose Chemical Corp. V. Superior Court, 6 Cal. 4th 287, 300 (1993). "The duty to defend is determined by reference to the policy, the complaint, and all facts known to the insurer from any source. " Id.; Gray v. Zurich Ins. Co., 65 Cal. 2d 263, 276 (1966). The question of coverage is judged, "not . . . on the basis of hindsight but, rather, from all of the information available to the insurer at the time of the tender of the defense." B & E Convalescent Ctr. v. State Comp. Ins. Fund, 8 Cal. App. 4th 78, 92 (1992). "However, where the information available at the time of tender shows no coverage, but information available later shows otherwise, a duty to defend may then arise." American States Ins. Co., 180 Cal. App. 4th at 26. The duty to defend applies even to claims that are "groundless, false, or fraudulent . . . [and] is separate from and broader than the insurer's duty to indemnify." Waller, 11 Cal. App. 4th at 19. "[T]he duty to defend a suit which raises a possibility of liability, but is eventually shown to be groundless, does not equate with a duty to defend a suit which raises no potential liability." B & E Convalescent Ctr., 8 Cal.

7

1  App. 4th at 100 (citing <u>Nichols v. Great American Ins. Companies</u>,
2  169 Cal. App. 3d 766 (1985)).
3      A.   Advertising Idea
4      The Policy defined covered "personal and advertising injury" to include injuries arising out of "the use of another's advertising idea in your 'advertisement.'" One of the allegations of Cisco's First Amended Complaint against Plaintiff was that Plaintiff "displayed on their website [Cisco's] Cisco Premiere Certified Partner Logo." (Pl. Ex. K at 148.) Cisco alleged that it informed Plaintiff that use of the logo was a trademark violation and that Cisco considered "use of Cisco Reseller Certified logos and advertising as a Cisco partner . . . to be false and misleading." (<u>Id.</u>) Plaintiff argues that these allegations constitute an allegation of injury arising from use of Cisco's advertising idea, therefore triggering coverage under the Policy.

The Policy does not define the term "advertising idea." Ambiguous coverage language in an insurance policy must be interpreted broadly in favor of coverage. <u>Silicon Valley Bank v. New Hampshire Ins. Co.</u>, 203 F. Supp. 2d 1152, 1157 (C.D. Cal. 2002). Contract language must be construed, however, in the context of the contract as a whole, with the goal of protecting "the objectively reasonable expectations of the insured." <u>Bank of the West v. Superior Court</u>, 2 Cal. 4th 1254, 1265 (1992). Here, as discussed in more detail below with respect to coverage exclusions, Plaintiff could not have reasonably expected trademark infringement to fall within the definition of "advertising idea." Plaintiff argues that Cisco's use of its Certified Premier Partner logo, and

8

the accompanying implementation of training classes and other prerequisites to obtaining premier partner status, constituted a method used to market its products, and therefore qualifies as an "advertising idea." Plaintiff, however, was not alleged to have copied Cisco's training or certification program, but simply to have copied the logo. At some level, everything a business does to market a product is an "idea." To read the term "advertising idea" so broadly as to cover any act taken in the course of marketing, including the use of a logo, would render the term almost meaningless. It remains unclear to the court how Plaintiff's decision to say that it was an authorized Cisco reseller, when in fact it was not, is a "marketing idea" and not simply a misrepresentation.

    Plaintiff argues that the court in <u>Lebas Fashion Imports of USA, Inc. v. ITT Hartford Ins. Group</u>, 50 Cal. App. 4th 548 (1996) supports its broad reading of "advertising injury." Indeed, the <u>Lebas</u> court did hold that an allegation of trademark violation triggered coverage under an "advertising injury" insurance policy. <u>Lebas</u>, 50 Cal. App. 4th at 562. Regardless whether this court would have so held, the terms at issue in <u>Lebas</u>, as well as the overall context of the contract, differ from those here. First, while the contract here referred to "use" of an advertising idea, the <u>Lebas</u> court construed the term "<u>misappropriation</u> of an advertising idea," alongside and along with the term "misappropriation of a style of doing business." <u>Id.</u> at 558, 561 (emphasis added). The inclusion of the word "misappropriation," not present here, was central to the <u>Lebas</u> court's analysis. <u>Id.</u> at 562-565. For similar reasons, <u>Sentex Systems Inc. v. Hartford</u>

9

Acc. & Indem. Co., 93 F.3d 578 (9th Cir. 1996) is of little help to Plaintiff. As in Lebas, the Sentex court analyzed the term "misappropriation of advertising ideas or style of doing business." Sentex, 93 F.3d at 580. Further, the complaint at issue in Sentex involved conduct much broader than that at issue here, including the misappropriation of trade secrets such as "customer lists, methods of bidding jobs, methods and procedures for billing, marketing techniques, and other inside and confidential information." Id.

Furthermore, and more centrally, the policy at issue in Lebas involved no coverage exclusions. Lebas, 50 Cal. App. 4th at 554. Here, in contrast, Plaintiff could not reasonably have interpreted "advertising injury" to cover its appropriation of Cisco's logo because the Policy expressly excluded injuries "[a]rising out of the infringement of . . . trademark . . . or other intellectual property rights."[3] Plaintiff argues that the intellectual property exclusion cannot apply "for the simple reason that the 'use of an advertising idea' is not the same thing as an 'infringement of an intellectual property right.'" (Plaintiff's Reply at 19:2-4.) The logic of this seemingly circular argument is unclear, and presupposes that Plaintiff's alleged misappropriation of Cisco's logo was an advertising idea inherently distinct from infringement of an intellectual property right. As discussed above, Plaintiff's misrepresentation, unaccompanied by any other aspect of Cisco's training, certification, or marketing plan cannot be characterized as a style of doing business. Under California law, "arising out

---

[3] That exclusion did not apply to copyright, trade dress or slogan infringement claims.

10

of" language in an insurance contract "broadly links a factual situation with the event creating liability, and connotes only a minimal causal connection or incidental relationship." <u>Acceptance Ins. Co. v. Syufy Enters.</u>, 69 Cal. App. 4th 321, 328 (1999); <u>See also</u> <u>Aloha Pacific, Inc. v. Cal. Ins. Guar. Ass'n.</u>, 79 Cal. App. 4th 297, 318-19 (2000). Cisco's allegations that Plaintiff improperly displayed Cisco's "Cisco Premiere Certified Partner" logo, and that Cisco considered such use a trademark violation, bear more than the minimal causal connection required to "arise[] out of "the infringement of . . . trademark . . . or other intellectual property rights."

B.  Slogan Infringement

The Policy's definition of covered "personal and advertising injury" included injuries arising out of "infringing upon another's copyright, trade dress or slogan in your 'advertisement'." The intellectual property exclusion, discussed above, did not apply to copyright, trade dress, or slogan infringement claims. Plaintiff argues that even if its use of the Cisco's "Cisco Premiere Certified Partner" logo does not trigger "advertising idea" coverage, Plaintiff's use of the words "Cisco Premier Partner" triggers coverage under the slogan provision of the Policy. (Plaintiffs Reply at 10; Opp. at 15.)

Defendants do not dispute that the Policy covered slogans. The question for the court is whether the phrase "Cisco Premier Partner" qualifies as a slogan. The California Supreme Court has held that a slogan is "a brief attention-getting phrase used in advertising or promotion." <u>Palmer v. Truck Ins. Exhange</u>, 21 Cal.4th 1109, 1120 (1999); <u>See also</u> <u>Street Surfing, LLC v. Great</u>

11

Am. E & S Ins. Co., 776 F.3d 603, 608 (9th Cir. 2014). It is possible that "the name of a business, product, or service, by itself," might qualify as a slogan. Palmer, 21 Cal. 4th at 1120.

There appears to be no dispute that Cisco never alleged slogan infringement or identified any "slogan" in its communications with or demand letters to Plaintiff. That fact alone is not dispositive. See Hudson Ins. Co. v. Colony Ins. Co., 624 F.3d 1264, 1268-69 (9th Cir. 2010) (Holding that, regarding the alleged slogan "Steel Curtain," "it does not matter that the NFL complaint never referred to "steel curtain" as a slogan and never listed slogan infringement as a cause of action."). In Street Surfing, however, the Ninth Circuit held that, absent any evidence that the third party used an alleged slogan as such, there could be no inference that the third party's trademark infringement and unfair competition claim would implicate slogan infringement. Street Surfing, 776 F.3d at 608-09. Thus, the court concluded, the insurer's did not have a duty to defend under a slogan infringement coverage provision. Id. at 609 (distinguishing Hudson).

Plaintiff attempts to distinguish Street Surfing by arguing that the allegations in Cisco's First Amended Complaint suggested that Cisco used "Certified Premier Partner" as a slogan. Plaintiff cites to paragraphs 41 and 61 specifically. Paragraph 41 alleges:

> In March 2013, a Cisco brand protection employee discovered that DEFENDANTS were displaying on the website Plaintiffs' Cisco Premiere Certified Partner logo. On March 19, 2013, Plaintiffs emailed DEFENDANTS requesting that they remove Plaintiffs' Cisco Premiere Certified Partner logo. Plaintiffs informed DEFENDANTS that continued use of Plaintiffs' logo would be considered a violation of Plaintiffs' trademark rights and that use of Cisco Reseller Certified logos and advertising as a Cisco partner are considered by Plaintiffs to be false and

12

misleading.  That same day, DEFENDANTS responded and agreed to remove the logo from their website.

(Plaintiff Ex. K at 148).  Paragraph 61 alleges:

> DEFENDANTS, in commercial advertising and promotion, misrepresented the nature, characteristics, qualities, or geographic origin of the CISCO products it sold, by falsely advertising that the counterfeit goods were genuine CISCO products and that they were an authorized Cisco partner.  The false advertising concerned material information that was likely to influence a consumer's purchasing decision.

(Id. at 152.)  Contrary to Plaintiff's characterization, these allegations do not indicate that Cisco itself used "Certified Premier Partner" as a slogan.  Indeed, that particular phrase does not appear in the allegations cited.[4]  Thus, as in Street Surfing, Defendants review of the allegations could not have ascertained that Cisco's claim might give rise to an infringement claim regarding a "Certified Premier Partner" slogan.

### C. Trade Dress

As stated above, the Policy's definition of covered "personal and advertising injury" included injuries arising out of trade dress.  Plaintiff makes a final argument that Cisco's "sales technique of using a blue circular logo to endorse its 'premier partners'" constitutes Cisco's trade dress, and that Plaintiff's use of that logo therefore triggered coverage.  (Plaintiffs' Reply at 13.)

"[T]rade dress involves the total image of a product and may include features such as size, shape, color, color combinations, texture, or graphics.  Vision Sports, Inc. v. Melville Corp., 888

---

[4] It is also unclear from the record whether Cisco itself used the phrase "Cisco Premiere Certified Partner," or whether the authorized partners themselves used that phrase.

13

F.2d 609, 613 (9th Cir. 1989) (internal quotation marks omitted). "Trade dress refers to the overall appearance of the product design, rather than its mechanics or a specific logo." Glob. Mfg. Grp., LLC v. Gadget Universe.Com, 417 F. Supp. 2d 1161, 1164 (S.D. Cal. 2006) (discussing Wal Mart Stores, Inc. v. Samara Bros., 529 U.S. 205, 209-10 (2000)). The "total image of a product" may also include "particular sales techniques." Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 765 (1992).

Although the overall image of a product may include a particular marketing technique, Plaintiff does not cite, nor has the court discovered, any authority for the proposition that sales technique alone can define a product's overall image. Nor is the court aware of any instance in which use of a logo, by itself, has been held to constitute a "sales technique" or trade dress. Cf. Vision Sports, 888 F.2d at 613 (Describing trade dress claim "focus[ing] upon the look and style of the clothing (including the fabric pattern), along with the color scheme and graphic display embodied in the . . . logo . . . .) (Emphasis added); See also Schwinn Bicycle Co. v. Ross Bicycles, Inc., 870 F.2d 1176, 1182 (7th Cir. 1989) "A product's trade dress is the overall image used to present it to its purchasers . . . . A *trademark* on the other hand is thought of as something more specific, such as a logo." (Internal citations and alterations omitted) (Emphasis original).

Like Plaintiff's propounded interpretation of "advertising idea," a definition of "sales technique" broad enough to encompass mere use of a logo would necessarily subsume virtually every act of advertising a good or service. Compare, e.g., HWE, Inc. v. JB Research, Inc., 993 F.2d 694, 695 (9th Cir. 1993) (Describing

parties' marketing technique of using "a substantial percentage of advertising and promotional material illustrating . . . unique image advertising illustrating female models wearing workout clothing lying upon [a] pad and holding [a] controller in her hand.").

Absent any allusion in Cisco's First Amended Complaint to trade dress, references to Cisco's "blue circular logo" alone did not suggest that Plaintiff may have been held liable for infringing upon Cisco's "sales technique" or trade dress. Accordingly, the Policy's trade dress coverage provision did not trigger Defendants' duty to defend.

**IV. Conclusion**

For the reasons stated above, Plaintiff's Motion for Partial Summary Judgment is DENIED and Defendants' Motion for Summary Judgment is GRANTED.[5]

IT IS SO ORDERED.

Dated: September 29, 2016

DEAN D. PREGERSON
United States District Judge

---

[5] Having concluded that Plaintiff has not proved the existence of a potential for coverage, the court does not address Defendants' additional arguments regarding the prior publication or failure to conform exclusions.

15